UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| BRANDY N. BURRELL, | ) |
|     Petitioner, | ) ) ) |
| vs. | )    Case No. 08-0175-CV-W-GAF-P |
| JENNIFER MILLER, et al., | ) ) ) |
|     Respondents. | ) |

**Response to Order to Show Cause Why
A Writ of Habeas Corpus Should Not Be Granted**

Respondent, by and through counsel, states as follows in response to this Court's order to show cause why a writ of habeas corpus should not be granted.

<u>Statement of Custody and Parties</u>

Petitioner Brandy Burrell is currently incarcerated at the Chillicothe Correctional Center located in Chillicothe, Missouri, pursuant to the sentence and judgment of the Circuit Court of Buchanan County. Burrell was convicted of endangering the welfare of a child in the first degree and murder in the second degree. The circuit court sentenced Burrell to concurrent terms of seven years imprisonment on the child endangerment count and life imprisonment on the murder count. Respondent Jennifer Miller, Warden of the Chillicothe Correctional Center, is Burrell's custodian and is the proper party respondent. 28 U.S.C. § 2254, Rule 2(a).

<u>Statement of Exhibits</u>

A. Petitioner's substitute direct-appeal brief to the Supreme Court of Missouri.

B. The state's substitute direct-appeal brief to the Supreme Court of Missouri.

C. Petitioner's substitute reply brief to the Supreme Court of Missouri.

D. The legal file from petitioner's direct appeal to the Missouri Court of Appeals.

E. Opinion of the Supreme Court of Missouri, affirming petitioner's conviction and sentence.

F. Petitioner's post-conviction brief to the Missouri Court of Appeals.

G. The state's post-conviction brief to the Missouri Court of Appeals.

H. The post-conviction legal file, Volume I.

I. The post-conviction legal file, Volume II.

J. The Missouri Court of Appeals' order and memorandum, affirming the denial of post-conviction relief.

K. The trial transcript, Volumes I and II.

L. The post-conviction evidentiary hearing transcript and exhibits.

Statement of Facts

The Supreme Court of Missouri summarized the facts surrounding Brandy Burrell's offenses as follows:

> [Burrell], her boyfriend, Isaiah Washington, Sr. ("Father"), and their two-year-old son, Isaiah Washington, Jr. ("Child"), drove in October 2001 from [Burrell's] home in Cameron, Missouri, to St. Joseph to visit Father's mother ("Grandmother"). When they arrived at Grandmother's house, Father began screaming and yelling at Child for saying a curse word. As they were going up the stairs, Father kicked Child hard enough to send him

flying to the top of the stairway and into the dining room, landing on his stomach. He then kicked Child hard in the torso while he was lying on the ground. When Child attempted to rise, Father picked him up and slammed his face into the floor. He also put his foot on Child's face. [Burrell] watched all of this and said nothing.

Father's brother ("Brother") witnessed the events and asked [Burrell] if she was going to intervene. After she did not respond, Brother confronted Father and told him to stop hitting Child. Father and Brother got into a fistfight, and Grandmother told them she was calling the police because she did not want her home damaged by the fight. Father immediately stopped the fight and told [Burrell] to pick up Child so they could leave.

[Burrell], Father, and Child went to the house of Father's aunt ("Aunt"). Aunt asked [Burrell] about the large knot that had formed on Child's forehead, and [Burrell] responded that Child fell. Aunt told [Burrell] that she should take Child to the hospital. [Burrell] said that they would take him to the hospital when they arrived back in Cameron. They stayed at Aunt's house for about twenty minutes and then returned to [Burrell's] house in Cameron.

After returning home, [Burrell] tried to feed Child, but he would not eat. He drank some milk and went to sleep. A couple hours later, Father tried to wake Child. Child was unable to stand on his own, and his eyes

rolled back. Father put Child down in the hall and slapped his face and kicked him in an attempt to wake him. After they were unable to revive him, [Burrell] and Father took him to the emergency room. By then, his body was limp, and he had no pulse and was not breathing. Hospital personnel were unable to resuscitate him, and he was pronounced dead shortly after midnight. [Burrell] and Father both told hospital personnel that Child had tripped and hit his head on a coffee table earlier in the day. Because Child had numerous new and old bruises on his body and injuries inconsistent with [Burrell's] story, hospital personnel contacted the police and medical examiner.

[Burrell] told the police that Child had fallen around 3 p.m. at her home and hit his head on a coffee table. She stated that because she was concerned he might have a concussion, she had kept him awake until 8 or 9 p.m. The police received information that Brother informed the police that Father assaulted Child earlier that day at Grandmother's house. When [Burrell] was told about Brother's statement, she did not reply and put her head down on the table. She indicated that she would like an attorney present, and the interview ceased.

An autopsy of Child's body revealed several injuries that were less than twenty-four hours old. The medical examiner noted external injuries to his forehead, left temple, right eyebrow, jaw, chin, lip, cheek, neck, chest, back, arms, left thigh, left ankle, groin, and an extensive portion of

4

his right abdominal region. Internally, the medical examiner found bruises and blood on both of his lungs, fresh blood in his diaphragm and throughout his organs, hemorrhaging from the superior and inferior vena cava, hemorrhaging from his spleen, a tear in his colon, and injuries to his small bowel and tongue. The medical examiner also detected two bruises in the soft tissue under his scalp and blood underneath his skull. X-rays revealed several rib fractures, five of which had occurred within twenty-four hours. In addition, there were multiple tears in his liver, some several inches deep. At trial, the medical examiner testified that the cluster of injuries to his ribs, liver, and diaphragm were consistent with him being kicked. She determined that the cause of his death was internal bleeding from his injuries.

The medical examiner also found older, healing injuries to Child's upper and lower back, upper arms, elbows, knees, thighs, ankles, ribs, and buttocks. She noted several of his external scars were inconsistent with ordinary childhood injuries or falls. The medical examiner also discovered internal scar tissue indicating previous liver injuries, including a healing hematoma on the right side of his liver and several older, healing rib fractures.

After Father was arrested in conjunction with Child's death, [Burrell] spoke with the police. She waived her Miranda rights and told a detective that Father had kicked Child "lightly in the butt" after he said a curse word

5
Case 4:08-cv-00175-GAF   Document 6   Filed 04/29/08   Page 5 of 15

and then placed him in the corner. She stated that Brother started a fight with Father, having taken offense to his discipline of Child. [Burrell] claimed that after they returned to her house in Cameron, Child tripped over a piece of loose carpet and hit his head on a coffee table. When confronted with the fact that witnesses had reported seeing the bump on Child's head earlier that day in St. Joseph and that the preliminary autopsy revealed that he died from internal injuries and not the head injury, [Burrell] was unable to provide an explanation for the internal injuries.

[Burrell] was subsequently arrested and gave a written statement in which she described Father's attack on Child at Grandmother's house. [Burrell] indicated that Father had started hitting and choking her while she was pregnant with Child. She stated that she and Father had separated while she was in jail and undergoing drug treatment for possession of marijuana, but that she starting (sic) seeing him again after she was released a year later. She said that shortly thereafter Father started hitting her and "beating on [Child]." He would "whoop [Child] hard on his butt" and that "it got to where [he] would punch and kick [Child]." [Burrell] claimed that she tried to stop Father from beating Child a few times, but he would beat her when she did. She indicated that she and Child lived with Father until he was arrested for possession of narcotics. After Father's arrest, [Burrell's] probation officer told her that she could not continue to live with him. She stated that she continued seeing him after he moved out.

> [Burrell] was charged with one count of child endangerment in the first degree and one count of murder in the second degree. After waiving her right to a jury trial, her case was tried to the court, and she was found guilty of both charges. She was sentenced to concurrent terms of seven years imprisonment on the child endangerment count and life imprisonment on the murder count.

*State v. Burrell*, 160 S.W.3d 798, 799-781 (Mo. banc 2005); (Respondent's Exhibit E).

The Supreme Court of Missouri affirmed Burrell's conviction and sentence on direct appeal. *Burrell*, 160 S.W.3d at 803. Burrell subsequently sought post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. (Respondent's Exhibit H, 10). The circuit court denied Burrell's motion for post-conviction relief, *id.* at 31, and the Missouri Court of Appeals affirmed. (Respondent's Exhibit J).

## Statement of Law

In this habeas action, Burrell reasserts the two points that she raised on direct appeal to the Supreme Court of Missouri and the one point that she raised on post-conviction appeal to the Missouri Court of Appeals. (Respondent's Exhibits A, 18-19; and F, 12). First, Burrell argues that there was insufficient evidence from which the trial court could have found her guilty of first-degree child endangerment. Second, Burrell argues that the evidence was insufficient to support her conviction for second-degree murder. Lastly, Burrell argues that her trial counsel was ineffective in failing to call certain witnesses who, if called, would have provided her with a viable defense that would have changed the outcome of her case.

The Supreme Court of Missouri and the Missouri Court of Appeals addressed each of Burrell's grounds on the merits. (Respondent's Exhibits E and J). Because there is no genuine dispute about the facts, federal habeas relief is available if Burrell can show that the state court decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As discussed below, Burrell has not met this burden.

*Ground I*

For her first ground, Burrell argues that she was deprived of her right to due process in that the state failed to prove beyond a reasonable doubt that placing Child in contact with Father would result in an "actual" risk to Child's life, body, or health, or that she "knowingly" created that risk. (Petition, 5). The appropriate inquiry for reviewing the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Additionally, this Court may not make its own determinations as to witness credibility. *Robinson v. LaFleur*, 225 F.3d 950, 954 (8th Cir. 2000). That determination is for the state-court trier of fact. *Id*. If the parties presented conflicting evidence, then this Court must presume that the factfinder resolved such conflicts in favor of the verdict. *United States v. Bolzer*, 367 F.3d 1032, 1035 (8th Cir. 2004).

Under Missouri law, a person commits the crime of child endangerment in the first degree if she "knowingly acts in a manner that creates a substantial risk to the life, body, or health of a child less than seventeen years old." § 568.045, RSMo (2000). In this

8

case, the state charged that Burrell knowingly created a substantial risk to her child when she placed him in direct contact with Father, a man whom she had seen physically abuse her child in the past, and in doing so she allowed Father to assault her child. (Respondent's Exhibit D, 17). Burrell argues that the state failed to prove that she created an "actual" risk to the child and that she acted "knowingly." (Petition, 5).

With respect to Burrell's first argument, the Missouri Supreme Court held that the state provided sufficient evidence from which a reasonable factfinder could conclude that Burrell's act of placing her child in contact with Father resulted in a substantial risk of harm to the child. *Burrell*, 160 S.W.3d at 802. The Supreme Court explained:

> Approximately a year before Child's death, Father began physically abusing Child. At first, he would slap Child hard on his butt, but later it escalated to his punching and kicking Child. [Burrell] tried to stop this abuse a few times, but Father would beat her when she did. The Division of Family Services ("DFS") had been called three times regarding the abuse; however, there were never any charges brought against Father because the injuries of Child healed before two of the DFS visits.
>
> Further, there was a risk to Child's life, body, or health after Father severely abused Child while at Grandmother's house. [Burrell] witnessed the entire incident and did not stop it or take steps to remove Child from Father. [Burrell's] actions in allowing Father to stay with them after this severe beating put Child in a situation where there was an actual risk of

harm to him. That night, Father continued the abuse by slapping and kicking Child when he would not wake.

*Id*. With respect to Burrell's argument that the evidence failed to prove that she acted "knowingly," the Missouri Supreme Court again disagreed:

> This Court holds that there was sufficient evidence that [Burrell] acted knowingly. [Burrell] acted "knowingly" if she was "aware of the nature of [her] conduct or that [the attendant] circumstances exist[ed]" that created a substantial risk to the life, body, or health of Child. *See* Sec. 562.016.3(2); Sec. 568.045. In her statement to the police, she admitted that Father's abuse of Child had escalated to the point where he hit and kicked Child, and that when Father did this, [Burrell] was unable to stop him on several occasions because he would then hit her. In addition, the medical examiner testified not only about Child's injuries from that day, but also about Child's older, healing injuries that were inconsistent with ordinary childhood injuries. Because [Burrell] was Child's primary care giver, it can be reasonably inferred that [Burrell] knew that Child had pain in his stomach and chest when these older injuries occurred. Even Grandmother saw bruises on Child's mouth, cheek, forehead, and lower back that concerned her. [Burrell] told Grandmother that these injuries were attributable to normal childhood injuries. Further, Father's abuse of Child was so severe that there were three investigations by DFS.

*Id*. at 802-803.

10
Case 4:08-cv-00175-GAF   Document 6   Filed 04/29/08   Page 10 of 15

Viewing the evidence in the light most favorable to the prosecution, the Missouri Supreme Court concluded that there was sufficient evidence to find Burrell guilty of first-degree child endangerment. *Burrell*, 160 S.W.3d at 803. The Missouri Supreme Court's decision had a sound basis in law and fact, and it did not contravene, or unreasonably apply, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1); *Colvin v. Taylor*, 324 F.3d 583, 587 (8th Cir. 2003) (a habeas court must defer to a state-court decision unless it "is *both* wrong *and* unreasonable"). Accordingly, Burrell's first ground for relief should be denied.

## *Ground II*

For her second ground, Burrell argues that there was insufficient evidence from which the trial court could have convicted her of second-degree murder because the state failed to prove that her actions were the proximate cause of her child's death. (Petition, 6). Under Missouri law, a person is guilty of second-degree murder if she commits any felony and, in the perpetration of that felony, another person is killed as a result of the perpetration of that felony. § 565.021.1(2), RSMo (2000). A defendant's criminal liability extends to any deaths that are the natural and proximate result of the commission of the felony. *Burrell*, 160 S.W.3d at 803.

In this case, the Missouri Supreme Court rejected Burrell's argument that she was not guilty of second-degree murder and that the actions of Father were an independent, intervening cause of her child's death. *Burrell*, 160 S.W.3d at 803. The court explained:

> There was sufficient evidence to find that Mother committed the
> class D felony of first-degree child endangerment, and in perpetrating that

> felony Child was killed as a result of the perpetration of that felony. As previously noted, [Burrell] placed Child in contact with Father on October 26. After witnessing Father's abuse of Child at Grandmother's house, [Burrell] allowed Father to stay with her and Child for the rest of that day. [Burrell] did not seek medical attention for Child although urged to do so. Father continued to abuse Child after they returned to [Burrell's] house.
>
> The evidence establishes the continuing abuse to Child and the clear causal relation between [Burrell's] conduct in placing Child in contact with Father, refusing to seek timely medical attention, and the death of Child. Father's actions in abusing Child were not an independent, intervening cause of Child's death that would relieve [Burrell] of criminal responsibility. Child's death was the foreseeable result of [Burrell's] actions. Under these circumstances, there was sufficient evidence to find [Burrell] guilty of second-degree murder.

*Id*.

As with her first ground, the Missouri Supreme Court's adjudication of Burrell's second ground for relief had a sound basis in law and fact, and it did not contravene, or unreasonably apply, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). Accordingly, Burrell's second ground for relief should be denied.

*Ground III*

For her third ground, Burrell reasserts the ineffective-assistance claim that she raised on post-conviction appeal. (Petition, 7-8; Respondent's Exhibit J, 2). Burrell argues that her trial counsel rendered ineffective assistance in failing to call certain witnesses who, if called, would have provided her with a viable defense that would have changed the outcome of her case by contradicting the state's allegation that she "placed" her child in danger from his father. *Id*. Specifically, Burrell argues that her attorney should have called: (1) her (Burrell); (2) Sue Ball, a social worker; (3) Rachel Loyd, a community support worker at Preferred Family Healthcare; (4) Deborah Bonderer, her probation officer; and (5) William Washington, the child's brother, in that, if called, they would have testified that Father was living with her, that she had no authority to prohibit his contact with their child, and that, therefore, she did not take any action to "place" the child in direct contact with Father. *Id*. Burrell believes that this evidence would have provided a complete defense to the charge of first-degree child endangerment. *Id*.

In order to succeed on a claim of ineffective assistance of counsel, Burrell must show that her counsel's performance fell below an objective standard of reasonableness, and that she was prejudiced by her counsel's failure to competently perform. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). In applying the *Strickland* test, the Missouri Court of Appeals determined that Burrell failed to satisfy either prong. First, Burrell failed to satisfy the performance prong because she did not overcome the presumption that her attorney made a strategic decision to not call the witnesses at issue. (Respondent's Exhibit J, 7). Second, Burrell was not prejudiced by her attorney's

13
Case 4:08-cv-00175-GAF   Document 6   Filed 04/29/08   Page 13 of 15

decision to forego the witnesses because "evidence that [Burrell] had chosen to live with [Father] along with her son, knowing the danger that [Father] posed to him, would not work as a defense to the charged offenses, but would most likely have worked to convict her." (Respondent's Exhibit J, 9). Under Missouri law, "[a] parent can be charged and convicted of endangering the welfare of a child by failing to protect him from an abusive parent, regardless of the living arrangements." *Id*. at 10 (citing *State v. Fuelling*, 145 S.W.3d 464, 470 (Mo.App. 2004) and *State v. Gaver*, 944 S.W.2d 273, 276 (Mo.App. 1997)). Therefore, Burrell's argument that she did not "place" her child in contact with Father because Father was living with her would not have provided a defense to the charge of first-degree child endangerment.

The Missouri Court of Appeals' decision, that Burrell's "trial counsel was not deficient for failing to call witnesses who would have testified that she and [Father] were living together at the time of [Father's] murder of the victim," did not contravene, or unreasonably apply, clearly established federal law, as determined by the Supreme Court of the United States. *See, e.g.,Hanes v. Dormire*, 240 F.3d 694, 698 (8th Cir. 2001) ("Decisions relating to witness selection are normally left to counsel's judgment, and this judgment will not be second-guessed by hindsight.") (citations omitted); and *Strickland*, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). Moreover, the Missouri Court of Appeals correctly identified and applied the *Strickland* test to the circumstances of Burrell's case. This Court must defer to the Missouri Court of Appeals' application of

the *Strickland* test unless it "is *both* wrong *and* unreasonable." *Colvin*, 324 F.3d at 587. Accordingly, Burrell's third ground for relief must fail.

## Conclusion

WHEREFORE, for the reasons herein stated, respondent prays that the Court dismiss the petition without further judicial proceedings.

              Respectfully submitted,

              JEREMIAH W. (JAY) NIXON
              Attorney General of Missouri

              \s\ John D. Hoelzer
              JOHN D. HOELZER
              Assistant Attorney General
              Missouri Bar #59855
              P.O. Box 899
              Jefferson City, MO 65102
              (573) 751-3321
              (573) 751-3825 fax
              John.Hoelzer@ago.mo.gov

              Attorneys for Respondent

## Certificate of Service

I certify that a true and correct copy of the foregoing was mailed, postage prepaid, this 29 day of April, 2008, to:

Ms. Brandy N. Burrell, #1029956
Chillicothe Correctional Center
1500 Third Street
Chillicothe, MO 64601

              \s\ John D. Hoelzer
              JOHN D. HOELZER
              Assistant Attorney General
              Missouri Bar #59855